UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE PORK ANTITRUST LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Civil No. 18-1776 (JRT/JFD)<br><br>**ORDER DENYING DEFENDANT TRIUMPH FOODS, LLC's MOTION FOR RECONSIDERATION** |

Defendant Triumph Foods, LLC ("Triumph") seeks reconsideration of the Court's denial of Triumph's Motion for Summary Judgment. *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758 (D. Minn. Apr. 28, 2025).[1] Triumph argues that in denying Triumph's summary judgment motion, the Court relied on evidence from third parties that would require the Court to apply the single enterprise theory and agency theory—theories that, Triumph argues were not properly pled or applied. Without this evidence, Triumph argues, the Court would have granted its motion for summary judgment. Plaintiffs[2] oppose Triumph's

---

[1] The summary judgment order was issued on March 31, 2025, *In re Pork Antitrust Litig.*, Civ. No. 18-1776, 2025 WL 964545 (D. Minn. Mar. 31, 2025), then amended on April 28, 2025.

The Court granted Triumph's request to file a motion for reconsideration "to the extent the request is related to the applicability of the single enterprise theory or agency theory" on October 8, 2025. (Docket No. 3160.)

[2] The Direct Purchaser Plaintiffs have settled with Triumph. The Plaintiffs for the purposes of this Order include the Consumer Indirect Purchaser Plaintiffs, the Commercial and Institutional Indirect Purchaser Plaintiffs, the Direct Action Plaintiffs, and the Commonwealth of Puerto Rico (collectively, "Plaintiffs").

motion for reconsideration.  Although the Court finds that the single enterprise theory was inadequately pled and is therefore not available to Plaintiffs, the Court concludes that there remains sufficient evidence to support its denial of Triumph's Motion for Summary Judgment.  Accordingly, the Court will deny Triumph's Motion for Reconsideration.

## BACKGROUND

Triumph is a pork processing company created in early 2003 by independently owned hog producers.  *In re Pork*, 781 F. Supp. 3d at 852 (citing the record).  Most of Triumph's hogs—up to 90 percent—are supplied through contractual agreements with Triumph's five LLC members, but the members do not produce hogs exclusively for Triumph; they also produce hogs for other processors.  *Id.* at 853.

Triumph processes its hogs, but it does not sell them.  Rather, Seaboard Foods LLC ("Seaboard") markets Triumph's processed pork products on Triumph's behalf.  *Id.* at 855–56.  Seaboard sells the pork products pursuant to a Marketing Agreement entered into by Triumph, Seaboard, and Triumph's members in 2004.  (Decl. of Shana E. Scarlett Opp. Triumph's Mot. Reconsider ("Scarlett Decl."), Ex. 15–16 ("Marketing Agreement"), Nov. 5, 2025, Docket Nos. 3185, 3186-12, 3186-13.)  The Marketing Agreement formed "a strategic alliance" under which Seaboard markets and sells the pork products produced at a pork processing plant constructed by Triumph.  (*Id.*)  Under the terms of the Marketing Agreement, Seaboard creates a marketing plan and sets the prices to facilitate

the sale of the pork processed by Triumph. (*Id.*, Ex. 15 at SBF0054491 (§ 6.03).)[3] Triumph, however, retains ownership of the pork products until they are sold to the customer. (*Id.*, Ex. 16 at SBF0054744 (§ 2).) Triumph pays Seaboard a base marketing fee (*see id.*, Ex. 15 at SBF0054492 (§ 8.01(a))), which is calculated, at least in part, based on the amount of pork processed by Triumph (*see id.*, Ex. 16 at SBF0054744 (§ 5)). The Marketing Agreement includes the following language: "This Agreement does not create a partnership, joint venture or agency relationship between the Parties, and neither Party shall be deemed to have an equity interest in the other Party by virtue of this Agreement." (*Id.*, Ex. 15 at SBF0054516 (§ 15.06).)

## DISCUSSION

### I.     STANDARD OF REVIEW

"A district court has the inherent power to reconsider and modify" a summary judgment order at "any time prior to the entry of judgment." *Hiscox Dedicated Corp. Member, Ltd. v. Taylor*, 162 F.4th 919, 927 (8th Cir. 2025) (internal quotation marks omitted) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995). The Court may grant a motion for reconsideration only upon a showing of "compelling circumstances." D. Minn. L.R. 7.1(j). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered

---

[3] Due to issues with the CM/ECF pagination, the Court will cite to the Bates pagination, if needed.

evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation omitted); *see also United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016).

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).

**II.   ANALYSIS**

Triumph argues that in denying Triumph's motion for summary judgment, the Court disregarded corporate separation principles and improperly relied on evidence from third parties that would require the Court to apply single enterprise theory and agency theory. As further outlined below, the Court finds that the single enterprise theory was inadequately pled, and it will not consider evidence that Triumph is liable for its LLC members' sow operations. While agency theory may be available to the Plaintiffs,

there are genuine disputes of material fact as to whether Triumph's marketing agreement with Seaboard and Seaboard's sales of the pork processed by Triumph established an agency relationship. The Court concludes that even without the use of single enterprise theory, there remains sufficient evidence to create a genuine issue for trial and to support the Court's denial of Triumph's summary judgment motion.

### A.   Single Enterprise Theory

The parties dispute whether Plaintiffs adequately plead single enterprise theory. The Court finds that Plaintiffs did not, and thus, the Court will not rely on—and will not permit Plaintiffs to rely on—evidence that Triumph is liable for its LLC members' sow operations.

"Although the pleading requirements under Rule 8(a) are relatively permissive, the essential function of notice pleading is to 'give the defendant fair notice of what the . . . claim is *and the grounds upon which it rests*.'" *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When a defendant has notice of the alleged grounds for plaintiff's claim, it can "tailor its defense accordingly," but a defendant should not be "required to intuit additional theories of liability that were not apparent from [plaintiff's] complaint." *Id.* at 993. Although courts are instructed to construe complaints "liberally," the pleading requirements under the Federal Rules "do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of

avoiding summary judgment." *Allan v. Minn. Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025), *cert. denied,* 146 S. Ct. 94 (2025) (citation omitted).

None of the Plaintiffs explicitly pled a single enterprise theory despite amending their complaints multiple times. The Court is particularly concerned with this omission because only two circuit courts have allowed the theory to be used offensively—and then, the theory was applied to sister subsidiaries or commonly owned affiliates. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1234 (10th Cir. 2017) (wholly owned sister subsidiaries); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 632 (9th Cir. 2018) (commonly owned affiliates).

Plaintiffs concede that their "complaints did not include the exact phrase[] 'single enterprise theory.'" (Pls.' Opp. Mem. at 8, Nov. 5, 2025, Docket No. 3184.) But they argue that by generally alleging Triumph was vertically integrated and including allegations about certain Triumph members in their complaints, Triumph was on sufficient notice of their single enterprise theory. (*Id.* at 5–8.) The Court disagrees.

As the court found in *In re Processed Egg Products Antitrust Litigation*, the use of the term "vertical integration" does not intimate that the members, "by allegedly being a part of a vertically integrated enterprise, are so linked that they effectively function as single entity with respect to alleged antitrust conduct." 821 F.Supp.2d 709, 749 (E.D. Pa. 2011). Nor is an allegation that Triumph cut back "its sow herd" (*see* Pls.' Opp. Mem. at 7 (quoting CIIPPs' Complaint)) sufficient to provide notice to Triumph and its members

that Plaintiffs were intending to ask the Court to disregard the corporate forms of Triumph and its members.

For at least these reasons, the Court concludes that it would be unreasonable to expect Triumph to have intuited Plaintiffs' offensive single enterprise theory of liability from the allegations made in Plaintiffs' complaints. *See Trambly v. Bd. of Regents of Univ. of Neb.*, 145 F.4th 922, 927 (8th Cir. 2025) (noting that the defendant was "was not required to intuit additional theories of liability that were not apparent from" plaintiff's complaint).

The Court also concludes that Plaintiffs' pleadings were inadequate under the closest Eighth Circuit precedent. The Eighth Circuit has not addressed whether single enterprise theory may be used offensively, but it has stated that "economic reality, not corporate form, should control the decision of whether related entities can conspire." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 275 (8th Cir. 1988). In *Mt. Pleasant*, the Eighth Circuit held the city (Mt. Pleasant, Iowa) could not sue the corporate members of a rural electric cooperative for Sherman Act violations because the members of the cooperative formed a "single enterprise pursuing a common goal[.]" *Id.* at 276. The court emphasized that for the city to overcome the cooperative's single enterprise defense, the city would need to present evidence that the members of the cooperative had "pursued interests diverse from those of the cooperative itself." *Id.* By "diverse" interests, the court clarified, it meant "interests which tend to show that any

-7-

two of the defendants are, or have been, actual or potential competitors . . . or, at the very least, interests which are sufficiently divergent so that a reasonable juror could conclude that the entities have not always worked together for a common cause." *Id.*

Thus, under the framework set out by the Eighth Circuit for a single enterprise **defense**, to establish an **offensive** application of the single enterprise theory, Plaintiffs would have needed to plead that Triumph's members had not pursued interests diverse from those of Triumph. But Plaintiffs did not plead that Triumph and its members always have the same interests and have always worked together for a common cause.[4]

The Court concludes that Plaintiffs did not adequately plead a single enterprise theory sufficient to put Triumph on notice. Accordingly, the Court will not consider evidence that Triumph is liable for its LLC members' sow operations.

B. **Agency Theory**

With respect to agency theory, the Court finds that the theory was adequately pled but that there is a factual dispute regarding whether Triumph's Marketing Agreement with Seaboard and Seaboard's sales of the pork processed by Triumph established an agency relationship.

---

[4] In contrast, Triumph presented evidence that Triumph and its members do not and have not always worked together for a common cause. Triumph's members existed before Triumph was formed (*see* Triumph's Slide Deck (from Hr'g on Mot. for Reconsideration) at 24, Jan. 8, 2026, Docket No. 3268) and sell a substantial portion of their hogs to processors other than Triumph (*id.* at 26 (citing the record)).

Traditional common law agency is defined as: "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) of Agency § 1.01 (A.L.I. 2006).

As with single enterprise theory, Plaintiffs did not explicitly plead an agency theory. But unlike the offensive use of single enterprise theory, agency and its application are common.  The Court finds that Plaintiffs' allegations in their Complaints—including their requests for relief from Triumph's agents or those acting on Triumph's behalf—were sufficient to put Triumph on notice of Plaintiffs' intent to hold Triumph liable for the consequences arising from the sales of its products, even if those sales were made by an agent.

While the Marketing Agreement between Triumph and Seaboard purported to disavow the formation of an agency relationship,[5] the Court is not bound by the parties' characterization of the relationship or by the contractual language.  *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1224 (8th Cir. 1987).  Rather, the Court finds that the existence of the agency relationship is a question for the finder of fact.  *E.g.*, *Waterhout v. Associated Dry Goods, Inc.*, 835 F.2d 718, 720 (8th Cir. 1987).  Seaboard had control over marketing

---

[5] (Scarlett Decl., Ex. 15 at SBF0054516 (§ 15.06) ("This Agreement does not create a[n] . . . agency relationship between the Parties[.]).)

and pricing, but Triumph had control over production and retained ownership of the product until it was sold to a customer. (*See, e.g.,* Scarlett Decl., Ex. 15 at SBF0054491 (§ 6.03), Ex. 16 at SBF0054744 (§ 2).) Moreover, it is unclear which party bore "most or all of the risks on transactions with purchasers." *Ryko*, 823 F.2d at 1223 (noting that "where the manufacturer bears the financial risks of transactions with the customers and continues to retain 'title, dominion and control over its goods' . . . it is likely that the distributor is merely an agent for the manufacturer" (quoting *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 345 (6th Cir. 1975))).

Because the existence of the agency relationship is a question for the finder of fact, the Court will consider evidence at this summary judgment stage that Triumph—including through Seaboard—conspired with other pork producers to fix prices on pork exports.

### C.  Motion for Summary Judgment

In denying Triumph's motion for summary judgment, the Court considered the evidence of collective conduct of Triumph and its members, evidence that Triumph constrained its pork production below the competitive level, evidence that Triumph colluded with other pork producers to fix prices on pork exports, evidence that Triumph may be liable for Seaboard's conduct, and evidence of Triumph's participation in Agri Stats' production and sales program. *In re Pork*, 781 F.Supp.3d at 854–57.

Even excluding evidence of collective conduct of Triumph and its members, when weighing all the evidence, the Court still finds there is enough in the record for a reasonable jury to find by a preponderance of the evidence that Triumph knowingly

joined the conspiracy. Thus, the Court concludes that it properly denied Triumph's Motion for Summary Judgment. The Court will, therefore, deny Triumph's Motion for Reconsideration.

## CONCLUSION

Although the Court finds that the single enterprise theory was inadequately pled and is therefore not available to Plaintiffs, the Court concludes that there remains sufficient evidence to support its denial of Triumph's Motion for Summary Judgment. Accordingly, the Court will deny Triumph's Motion for Reconsideration.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Triumph Foods, LLC's Motion for Reconsideration (Docket No. [3164]) is **DENIED**.

DATED: March 10, 2026                                             _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                               JOHN R. TUNHEIM
                                                                         United States District Judge